## POWE & SMITH *v.* STERRETT, Judge, &c.

1. Since the passage of the act of 1843, where a judgment is rendered against an administrator, within eighteen months from grant of administration, and execution is returned no property, it is a good defence to an action thereon against him, suggesting a *devastavit*, that, after the rendition of such judgment, the estate was regularly declared insolvent.

Error to the Circuit Court of Wilcox. Tried before the Hon. Geo. W. Stone.

This was an action of debt instituted by the defendant in error, for the use of Robert N. Murphy, against the plaintiffs in error, on a bond executed by them as administrator and administratrix of the estate of Archibold K. Smith—suggesting a *devastavit.* It appears from the record, that a suit was pending against the intestate at the time of his death, in favor of said Murphy, which was revived against the plaintiffs in error as his personal representatives, and judgment obtained therein within eighteen months after grant of administration, and upon which execution issued and was returned no property; and that after the rendition of this judgment the estate was declared insolvent. Upon this state of facts, the defendants below requested the court to charge the jury that the said declaration of insolvency related back to the death of the intestate, and that if they believed the proof, the plaintiff could not recover. This charge the court refused to give, whereupon the defendants excepted, and now assign it as error,

Sellers, for plaintiffs in error:

It is insisted by the plaintiffs in error, that the Circuit Court should have given the charge asked. The declaration of insolvency of the estate of A. K. Smith, the plaintiff's intestate, related back to his death. 1 Brayton (Verm.) 133; 2 U. S. Dig. 546. If this is not so, what possible defence at law could administrators interpose to protect themselves against personal liabilities? The administrators could not have interposed the plea of *plene administravit,* although their securities, when sued, might. The plea of *plene administravit* cannot be interposed

by administrators in this State under any circumstances; and the common law is wholly inapplicable in this State upon that subject.

The judgment, when obtained against the administrators, operated only to ascertain or liquidate the demand, and the subsequent declaration of insolvency estopped the plaintiff thereafter from further prosecuting his judgment, and the law then referred him with his judgment to the Orphans' Court for his rateable distribution of the assets of said estate.

I am aware that this court has decided seemingly different from the views above expressed, in the case of Garrow v. Emanuel, 3 Stew. Rep. 285; but upon looking into that case, it will be seen that the facts governing it and those involved in this case are materially different.

WATTS & JACKSON, for defendant in error:

1. The bill of exceptions does not profess to show all the testimony before the court and jury; yet the charge asked is, "If the jury believe the testimony, they cannot find for the plaintiff below." This court cannot undertake to say whether there was error in refusing the charge, without knowing what was the whole proof. The bill of exceptions is to be taken most strongly against the party excepting; all presumptions are indulged in favor of the inferior tribunal. Holmes v. Gayle and Bower, 1 Ala. Rep. 517; Stone v. Stone, 1 ib. 582; Knapp v. McBryde and Norman, 7 ib. 19; Mallory v. Stodder, 6 ib. 801; Castles v. McMath, 1 ib. 326.

2. But upon the testimony shown by the bill of exceptions, the court might well have refused the charge—1st. Because the court is asked to charge directly on the facts—Huff v. Cox et al. 2 Ala. 210. 2d. Because the rendition of the judgment against the administrator as such, and a return of " no property found" on the execution, fixed a *devastavit* on them to the extent of the judgment—Garrow v. Emanuel, 3 St. 285; Thompson v. Searcy and Fearne, 6 Port. 393. The case of Garrow v. Emanuel (3 Stewart) has never been overruled; this decision was made in view of the statutes before the one of 1843. This last statute has not altered the *amount* of proof required by the plaintiff to show a *devastavit* as administrator.

COLLIER, C. J.—In Garrow v. Emanuel, 3 Stew. 285, it was decided that a judgment by default against an executor, and return of execution ' no property found,' are conclusive evidence of a *devastavit* to the amount of the judgment, in a second action by the same plaintiff against him, in his individual character, suggesting a *devastavit: Further,* that the executor cannot in such second action plead the insolvency of his testator's estate under statute—his personal liability being fixed by the judgment in the the first suit. This case certainly laid down a most stringent rule in its last proposition, even under the legislation as it existed at the time it was decided. An executor or administrator was then sueable " after the expiration of six months from the time of proving the will of the testator, or of granting letters of administration on the estate of the deceased." This time was prescribed " to the end that the executor or administrator may have an opportunity to ascertain the situation of the estate of the testator or intestate."—Clay's Dig. 192, § 2. The act of 1815 enacts that all claims against the estates of deceased persons, which are not presented to the executor or administrator within eighteen months after the same shall have accrued, or within eighteen months after letters testamentary or of administration, shall be forever barred: *Provided,* that this limitation shall not extend to persons under age, &c.—Cl. Dig. 195, § 17. Under the decision refered to and the statutes we have cited, an administrator might be sued, and in an ordinary case a judgment recovered and enforced against him previous to the expiration of the time limited for the presentation of claims against the estate, though claims might be subsequently presented within the bar, which manifested the insolvency. The only means of preventing irreparable injury to the administrator in such case, would be to allow him to retain a sufficient amount of the assets to indemnify himself, notwithstanding he had reported the estate insolvent. But where the judgment remains unsatisfied, when the report is made and confirmed, if he cannot plead the insolvency, he must be personally charged, or if the estate is liable to him, the judgment creditor who has most promptly put his claim in suit will be paid *in toto,* to the prejudice of others equally meritorious. We will not stop to consider whether the case cited was consonant to our statutes upon the subject, or whether

the consequences resulting from it should not have induced a different decision.

By the eighth section of the act of 1843, it is enacted that "Whenever any administrator *de bonis non* shall be appointed, according to the provisions of this act, any former grant of letters testamentary or of administration of the said estate shall be thereby revoked; and all the goods, chattels, moneys, choses in action, and other personal effects, belonging to the said estate, shall be thereby vested in such administrator *de bonis non;* and he shall be entitled to demand and receive from the former executor or administrator all moneys found due and owing from him to the estate, and all such goods, chattels, choses in action, and other personal effects, and deeds, and other evidences of title to real estate, and may recover the same by any proper proceedings or actions, either in the Orphans' Court or any court of common law or equity, against such former executor or administrator and his securities."—Clay's Dig. 194, § 9. This provision, it will be seen upon the decree of insolvency and the appointment of the administrator *de bonis non,* divests the title of the previous representative of the estate; and any further intermeddling with the estate, except for conservative purposes, makes him an executor *de son tort.* See Hearrin, adm'r, v. Savage, adm'r, at this term. The effect of the decree of insolvency, it has been held, is to transfer to the Orphans' Court the entire jurisdiction of all claims against the estate; with a few exceptions, all debts are placed on the same footing, though the estate be solvent, and where it is insolvent, the fund for distribution is to be equally divided amongst all the creditors who are not thus privileged. Edwards v. Gibbs, 11 Ala. Rep. 292.

The administrator, being divested of the assets by due course of law, cannot be charged with the payment of the judgment; and the only question is, in what *forum* shall he seek relief—whether in equity or at law. Even if *secundum stricti juris,* the administrator could be charged upon the suggestion of a *devastavit,* there can be no question but equity would interpose and relieve him. Having delivered over the assets to his successor as the statute required, we think the common law inference from the recovery of the judgment and the return of "no property found," is entirely repelled, and the defence may

be made in a court of law. This conclusion seems to us to result from the controling efficacy of the statue, which, conceding that *Emanuel v. Garrow*, was a correct exposition of the law when made, supersedes and annuls it, so far as it is in conflict with the present case.

The judgment is reversed, and the cause remanded.