## MIDDLETON'S ADM'R, et als. vs. MAULL'S ADM'R.

1. Creditors of an estate, regularly declared insolvent, who have presented their claims to the administrator within eighteen months after grant of administration, but who have failed to file them with the clerk within six months after the decree of insolvency, are entitled to be paid if the estate should ultimately prove *solvent*, and at the final settlement, should be permitted to show that the administrator is chargeable with assets which he has not accounted for, with a view of establishing the fact of its solvency.

Error to the Orphans' Court of Lowndes.

This was a proceeding before the Orphans' Court for a final settlement of the administration of James Maull, deceased, on the estate of James P. Larkins. It appeared that Maull, the administrator, had reported the estate of his intestate insolvent, and that on the 8th of July 1844, after due notice, a decree was rendered declaring said estate insolvent. A final settlement was ordered to be made on the 14th day of April 1845. On the day appointed, David H. Middleton, Benjamin Mock and other creditors of the said James P. Larkins appeared and filed exceptions to the account filed by the administrator for final settlement, and suggested that he had not charged himself with various sums of money received by him as such administrator, and also that he had not accounted for

various articles of personal property, consisting of the crop growing in 1843, at the time of said Larkins' death, and also certain slaves. The administrator replied to these suggestions or exceptions to the account filed for final settlement, denying their truth, and averring that none of the contesting creditors had filed their claims in the clerk's office within the time prescribed by the statute after the estate was declared insolvent, and he therefore insisted that these claims were barred, and that the creditors had no right to controvert the account or object to the settlement. On the trial it appeared that the estate was duly declared insolvent on the day specified, and although the contesting creditors had presented their claims to the administrator within eighteen months from the grant of letters of administration, yet they had not filed their claims in the clerk's office within six months from the time the estate was declared insolvent. Two of said creditors, Middleton and Mock, offered to prove on final trial that all the exceptions filed by them to said final settlement were true, and that the estate was not insolvent, but the court rejected the evidence, and they excepted. On this state of the proof, the court decided that their claims were barred by the statute, and that they could not make themselves parties to, or contest the correctness of the accounts on the final settlement; to which ruling of the court the plaintiffs in error also excepted. The errors assigned are: 1st—that the court erred in receiving as evidence the record of the decree of insolvency; 2d—that the court should have received proof that the estate was not insolvent.

BOLLING and T. & J. WILLIAMS, for plaintiffs in error.

JUDGE & STONE, for defendant.

CHILTON, J.—The question presented by the record is, whether the creditors of Larkins' estate, Middleton and Mock, who had presented their claims to Maull, the administrator, within eighteen months, but who had not filed them with the clerk of the Orphans' Court within six months after the estate had been declared insolvent, should have been allowed *upon the final settlement of the estate to show that the estate was then solvent, by proving that the administrator had failed to charge himself with the crop of 1843, and with eight slaves specially*

*named, and a wagon and harness, which he failed to return to said Orphans' Court as assets.*

In the opinion of the court below, the failure of these contesting creditors to file their claims within six months after the estate was declared insolvent, was a complete bar, notwithstanding the estate *at the time of final settlement* may have been perfectly solvent. We readily concede, that all the creditors who fail to exhibit their claims within six months after the estate is declared insolvent must be excluded, and their claims barred, *if the estate continues insolvent up to the final settlement.* That is, such claims are barred as against the assets of an insolvent estate. Such is the decision in Hollinger v. Holley, in 8 Ala. Rep. 454, as I understand it. But that the decree of insolvency, predicated as it is upon the report of the administrator—which report in the nature of things must in many cases be incorrect—shall be final and conclusive upon the court and all the creditors, notwithstanding the estate may afterwards turn out to be perfectly solvent, is opposed, in my opinion, not only to our previous decisions, but to the spirit of our legislation and to all the analogies of the law.

By the act of 1843, (Dig. 192, § 2,) the administrator, &c., when the estate is in his opinion insolvent, is required to file an allegation of the fact, praying that it may be so declared, which allegation is to be accompanied by three schedules thereto attached, viz: one is to contain the full statement of all the goods and chattels, choses in action, and personal estate of the deceased, with the estimated value thereof; the second, the real estate with its location, the nature of its tenure, and its estimated value; and the third, a statement of all the claims against the estate, their nature and amount, and the residence of the creditors. Upon the filing of such allegation, a day is set apart by the clerk or judge for declaring the estate insolvent; notice is to be given by publication, &c., and if no objection is made by the creditors on the day, the decree passes as a matter of course, but if objection is made, an issue is formed and the question of solvency *vel non* tried by a jury.—The act does not provide for the litigation between the creditors as to the justness of their respective demands upon this issue, but contemplates that their claims shall be *afterwards* filed within six months; and the mode of bringing on the con-

test between them is pointed out, which may be done by the administrator or any creditor in his name filing objections to any claim within nine months from the decree of insolvency. I cite these statutes, stating them substantially, to show that the decree of insolvency was evidently designed by the Legislature as interlocutory merely. The administrator in his schedule of effects may return a number of desperate notes due the estate—may mistake the value of the real and personal property; by the collection of these notes, supposed to be desperate, or the appreciation in the value of the assets, the estate may, after the decree of insolvency, be rendered perfectly solvent. Besides, the claims presented in the six months, or a large portion of them, may turn out to be wholly unjust, and thus the estate, though reported insolvent and so declared upon the presumption of their justness, is and always has been able to pay all its debts. In such case, where the estate is able to pay all the debts, as well those presented in eighteen months as those presented in six months after the decree of insolvency, the effect of the final settlement is to set aside the interlocutory decree of insolvency, and the creditors are paid in full, instead of receiving a *pro rata* distribution; and all the creditors who have presented their claims within eighteen months have the right to be paid, for the reason that the estate is settled as a solvent, not an insolvent estate. Such was the decision by this court in Phelan v. Phelan, 13 Ala. Rep. 679, where it was held that although an estate was declared insolvent, yet if on settlement it proves not to be so, creditors who have not filed their claims within the six months are nevertheless entitled to payment if they had presented such claims to the administrator within eighteen months after grant of administration. Now it appears to me to be an anomaly in judicial proceedings, to hold that if the estate *chance* by the administrator's own showing, or by a controversy raised at the instance of the creditors who have proved their claims within six months, to turn out solvent, the eighteen months creditors may come in, and yet that they shall be denied the privilege of showing the facts upon which the payment of their claims depends, viz: that assets have come to the administrator's hands adequate to the payment of all the debts. The fact that the six months creditors, if I may thus designate them, may

show the estate to be solvent on final settlement by charging the administrator with assets not returned, is sufficient to show that the decree of insolvency is not conclusive. (See Clay's Dig. 226, § 27.) In Edwards v. Gibbs, 11 Ala. Rep. 292, it was held, that the effect of a decree of insolvency is to transfer to the Orphans' Court *the exclusive jurisdiction of all claims against the estate*, and in that court, on final settlement, it may be shown that the administrator has withheld or wasted the assets. So that according to this decision, if the creditors have no remedy in the Orphans' Court, they cannot sue upon the bond, or otherwise hold the administrator liable for his failure to return to the court a proper account of the assets which came to his hands.

To hold that these creditors are barred for failing to present their claims in six months after the decree of insolvency, when the estate is on final settlement solvent, is to dispense with the statute of 1815, usually denominated the statute of non-claim, which is the only statute prescribing *in terms* a bar for failing to present claims, and which provides that unless they are presented within eighteen months from the grant of administration, they shall be barred.—Clay's Dig. 195, § 17. I am then of opinion that Middleton and Mock, who had presented their claims within eighteen months, should have been allowed to prove on the final settlement that the estate was solvent, and that the court erred in refusing to permit them to show that the administrator had received or should have been charged with assets which had not been returned, and for which he had in no wise accounted. A different conclusion would cut off many creditors, who, charged only with constructive notice of the allegation of insolvency, and without any notice in fact, have failed to contest with the administrator the truth of his allegations of the insolvency of the estate. It would, in such cases, be holding out inducements to administrators to report estates insolvent, on a partial ascertainment of their true condition, with the hope that should the effects turn out sufficient to pay all the debts, they should retain the surplus after paying the creditors who have come in and filed their claims in six months under the act of 1843; for if the decree of insolvency be final and conclusive, and may not be gainsaid on final settlement, then as the distributees cannot share with creditors in

an insolvent's estate, the administrator would be entitled to the surplus, which could never have been contemplated by the Legislature. It is unnecessary for us to determine whether the creditors, who have presented their claims in eighteen months, can come in if the estate is more than sufficient to pay the six months creditors, but not adequate to pay all the demands presented against it. All that we decide now is, that if the estate is solvent, those creditors who have presented their claims in eighteen months are entitled to payment on final settlement, and to show that it is solvent by charging the administrator upon such settlement with all the assets which have come to his hands, or which should by the exercise of proper diligence have been reduced to his possession. In this opinion the Chief Justice coincides with me.

The decree of the Orphans' Court is consequently reversed and the cause remanded.

DARGAN, J.—I cannot concur in the opinion of the court. I think it too clear to admit of argument, that a decree of insolvency, rendered in accordance with the provisions of the act of 1843, is final and conclusive on all the creditors, and neither they nor any one else can be permitted again to litigate that question. The fact of insolvency by the decree becomes res adjudicata, and is equally as conclusive on all parties as any other sentence or judgment pronounced by a court of competent jurisdiction.

The only question, therefore, is, whether any creditor can be permitted (if he has failed to file his claim within six months after the estate has been declared insolvent) to litigate any question with the administrator, with the view to swell the amount of the assets and thus create a larger dividend. If a creditor who has neglected to file his claim with the clerk within the time prescribed by law can be permitted to do this, has he not the right to show that the assets are sufficient to pay all the debts, and thus re-litigate the question of insolvency?

In the case of Hollinger v. Holley, 8 Ala. 454, this act was fully considered, and the court held, that if a creditor neglected to file his claim within six months after the decree of insolvency, in the office of the clerk of the Orphans' Court, his

Middleton'3 Adm'r et al    v.   Maull's Adm'r.

claim or demand was barred.   I am satisfied that this opinion
is a correct exposition of the act; and if a creditor omits to
file his claim with the clerk in the manner prescribed, he can-
not be permitted to litigate any question whatever with the
administrator in reference to the amount of the assets in the
Orphans' Court.

It is however urged that the case of Phelan v. Phelan, 13
Ala. 679, is opposed to the case of Hollinger v. Holley and to
the views here expressed.   The facts of that case were pecu-
liar.   The creditor who had not filed his claim had obtained
a judgment at law against the administrator before the decree
of insolvency.   It afterwards appeared, that the estate was sol-
vent, and after paying all claims that had been filed in the
clerk's office, there was a large balance in the hands of the
administrator, who then paid all the judgments against him
but one, which had not been filed with the clerk within the
prescribed time, and did not contest the payment of this one,
but insisted as against the right of the distributees to retrieve
the amount of the judgments he had paid, as well as the
amount of the one not paid, but which he did not contest.  We
held that he ought to be permitted as against the distributees
to retain those amounts.

If it be conceded that this decision can be sustained, which
I think is very doubtful, yet it will not sustain the position
that a creditor can litigate on a final settlement the question
of the insolvency of the estate, to avoid the consequences re-
sulting from a failure on his part to file his claim within a pre-
scribed time.   Here the administrator insists on the failure of
the creditor to file his claim as a bar to all litigation against
him in the Orphans' Court.   To hold that this does not create
a bar, when pleaded as such, I think not only overrules the
case of Hollinger v. Holley, but is directly repugnant to the
intention and design of the act of 1843.