# WALKER *vs.* MOCK'S ADMINISTRATOR.

### [ACTION ON COMMON MONEY COUNTS.]

1. *Competency of administrator in chief as witness for administrator de bonis non.*—Under the provisions of the Code, (§ 2302,) the administrator in chief is a competent witness for the administrator *de bonis non*, in an action brought by the latter, in his representative capacity, to recover money which was paid by the administrator in chief through a mistake of fact, and which is assets of the intestate's estate.

2. *Conclusiveness of probate decree declaring estate insolvent.*—Where a decedent's estate was regularly declared insolvent by the probate court in 1849, but was afterwards settled as a solvent estate ; and, on that settlement, the administrator was allowed a credit for the amount of a claim paid by him, which had been filed against the estate within

nine months after the declaration of insolvency; and the surplus remaining in his hands, after paying all the debts, was, by the decree of the court, divided among the several distributees,—the decree of insolvency does not conclude a succeeding administrator *de bonis non* who seeks to recover the money from such creditor, from showing, that the claim had been previously paid, and was paid by the administrator in chief in ignorance of that fact.

3. *When action lies to recover money paid by mistake.*—If an administrator in chief pays a claim which is alleged to be due from his intestate's estate, in ignorance of the fact that it has been already paid, and is allowed a credit for the payment on final settlement of his accounts, the money may be recovered from the creditor, by a succeeding administrator *de bonis non*, in an action for money had and received.

APPEAL from the Circuit Court of Lowndes. Tried before the Hon. JOHN K. HENRY.

THIS action was brought by Thomas M. Williams, as the administrator *de bonis non* of the estate of Benjamin Mock, deceased, against Mrs. Eliza Walker; and was commenced on the 24th February, 1860. The complaint averred, that the money sought to be recovered was "due by account on the 18th February, 1856"; also, "money had and received by the defendant, on the 18th February, 1856, for the use of the plaintiff, as administrator as aforesaid"; also, "money belonging to the estate of said Benjamin Mock, deceased, and paid by David A. Steele, the administrator in chief of said estate, on the 18th February, 1856, for the use of said defendant, and at her request"; and "money had and received by the defendant, on the 18th February, 1856, for the use of David A. Steele, the administrator in chief of said estate, which money is assets of said estate." The record does not show what pleas were filed.

The facts of the case, as disclosed by the evidence adduced on the trial, and stated at greater length in the bill of exceptions, are the following: David A. Steele was the administrator in chief of the estate of Benjamin Mock, deceased, under appointment by the orphans' court of Lowndes county, and reported said estate insolvent; and said estate was accordingly declared insolvent, by decree of said orphans' court, on the 1st November, 1849. On the 27th April, 1850, Mrs. Eliza Walker, the defendant in this case, filed as a claim against said estate a judgment in favor

36

of Emanuel & Gaines, against Robert Lowe, Benjamin Mock, and George Walker, who was at that time the husband of said Eliza Walker; which judgment had been previously transferred by the plaintiffs therein, to George C. Thurber, as trustee of Mrs. Eliza Walker. An execution was regularly issued on this judgment in May, 1851, and was levied on certain slaves as the property of said George Walker. The slaves were sold under said execution, and were bought at the sale by said Thurber, as trustee of Mrs. Walker, who was at that time the owner of the judgment; and the execution was thereupon returned by the sheriff "satisfied in full." On the 18th February, 1856, said Steele, as administrator of Mock, paid to Mrs. Walker, in satisfaction of said judgment, the sum of $1602 09; said payment being made with moneys which were assets of said intestate's estate, and in ignorance of the fact that the judgment was already satisfied as above stated. In September, 1856, a final settlement of said intestate's estate was made by said administrator; and on that settlement, it was ascertained by the decree of said probate court, that all the debts had been paid, and that the estate was solvent; and it was thereupon settled as a solvent estate, and the surplus remaining in the administrator's hands was distributed among the distributees of the estate. On this settlement, the only parties before the court being the administrator and the distributees, the former claimed and was allowed a credit for the amount paid on said judgment, and was by the decree of the court discharged from the administration. At the time this settlement was made, the administrator and the distributees were still ignorant of the fact that said judgment had been previously satisfied, and the administrator's claim to a credit for the payment was not controverted by the distributees. The plaintiff in this action was duly appointed the administrator *de bonis non* of said Mock's estate, before the institution of this suit, and sued to recover the money so paid by the administrator in chief. The plaintiff offered said Steele as a witness on the trial, and the court overruled an objection to his competency; to which ruling of the court the defendant reserved an exception.

"This being all the evidence in the cause, the court

charged the jury, that if they believed, from the evidence, that said Steele was the administrator of said Benjamin Mock, appointed by the probate court of Lowndes county, and, as such administrator, paid to the defendant, in the year 1856, out of the assets in his hands, about sixteen hundred dollars, on a judgment against said estate then claimed and owned by her; and that said judgment had been previously (about 1851) paid and extinguished; and that said Steele, at the time he made said payment, was ignorant of the fact that said judgment had been previously paid and extinguished, and under mistake as to the fact thereof, believing it to be a debt due by said estate; and that afterwards, in September, 1856, said Steele made a final settlement of, and was discharged from said administration; and that, on said settlement, he claimed and was allowed a credit for the amount so paid by him; and that said Steele and the distributees, at the time of said settlement, were ignorant of the fact that said judgment had been satisfied prior to its payment by said Steele; and that afterwards, before this suit was brought, the plaintiff was appointed by said probate court the administrator *de bonis non* of said estate,—then the plaintiff was entitled to recover from the defendant the money so paid to her by said Steele.

"The court further charged the jury, that if they believed, from the evidence, the facts set forth in the above charge, the plaintiff's right to recover would not be defeated, although they might also believe, from the evidence, that the estate of said Mock was declared insolvent by said probate court on the 1st November, 1849; and that said judgment was filed in said court, as a claim against said estate, on the 27th April, 1850; and that, on the final settlement of said Steele's administration, it was ascertained by the decree of said court that said estate was solvent, and that all the debts had been paid; and that said estate was thereupon, by the decree of said court, ordered to be settled as a solvent estate, and was so settled; and that the only parties to said settlement were the said administrator and the distributees of the estate, and that some of the distributees were minors."

The defendant excepted to these charges, and requested the court to instruct the jury as follows :

"1. That if they find, from the evidence, that the money sought to be recovered in this action was paid by said Steele, as administrator of said Mock's estate, in settlement of a claim held by the defendant against said estate, then this was an administration of the matter by said Steele, and, if he acted improperly in paying the same, he was liable to the distributees of the estate, but the defendant was not liable to the administrator *de bonis non*.

"2. That if they find, from the evidence, that said Steele, as the administrator in chief of said Mock's estate, paid the money sought to be recovered, on a claim against said estate ; and that his payment of the same has been passed to his credit as a voucher, by a decree of the probate court of Lowndes county,—then this is such an administration of the matter as will not permit the present plaintiff to recover in this action.

"3. That an administrator *de bonis non* is entitled to the goods of the intestate which remain *in specie*, unadministered by the administrator in chief ; and that if they find, from the evidence, that Steele paid the money in controversy as such administrator in chief, although he may have acted improperly in doing so, still it was such an administration as will prevent a recovery by the plaintiff in this action.

"4. That if they find, from the evidence, that said Steele, as the administrator of Mock's estate, paid the money in controversy to the defendant, out of the assets of said estate, such payment does not create any liability against the defendant, in favor of the present plaintiff, although the defendant may have once received the amount by the sale of George Walker's negroes. .

"5. That if they find, from the evidence, that said Steele, as the administrator in chief of said Mock's estate, made a final settlement of said estate ; and that all the parties in interest were represented on said settlement ; and that the voucher for the payment by Steele to the defendant of the money in controversy was allowed as a credit to said Steele on said settlement,—then that decree of the probate court

is conclusive against the plaintiff in this action, so long as the same is in force and unreversed, and the plaintiff can not recover.

"6. That the estate of said Mock having been once declared insolvent by the probate court of Lowndes county, the allowance of the claim, as having been paid by Steele to the defendant, by the decree of that court, is final in favor of the defendant, and the money can not be recovered in this action.

"7. That if they believe all the evidence in the case, they must find for the defendant."

The court refused each of these charges, and the defendant excepted to their refusal; and she now assigns as error the charges given by the court, the refusal of the several charges asked, and the overruling of the objection to the competency of Steele as a witness for the plaintiff.

J. F. CLEMENTS, and GEO. S. COX, for appellant.

WATTS, JUDGE & JACKSON, contra.

PHELAN, J.—This was an action for money had and received. The main facts of the case are these: David A. Steele, who was the administrator of the estate of Benjamin Mock, deceased, reported the estate as insolvent, and it was so declared or decreed by the probate court of Lowndes county. Among the claims filed against the estate was one for $1602 09, filed by the appellant, Eliza Walker. This was in the form of a judgment originally obtained by Emanuel & Gaines against Robert Lowe, George Walker. and Benjamin Mock, the intestate of said Steele, administrator; and was then the property of said Eliza Walker. Previous to the filing of said claim, the said judgment had been fully paid and satisfied by a sale under execution of the property of George Walker, one of the defendants in the judgment. The estate of Benjamin Mock, though declared insolvent, was found in fact not to be so; and the probate court proceeded to settle and decree distribution among the lawful distributees of said estate, as of a solvent estate, it being shown that all the debts due by the estate had been paid and satisfied. Among the debts shown to

be paid was this claim of Mrs. Walker ; and, on settlement, the amount of it was allowed to the administrator, Steele, as a lawful credit. At the time this payment was made by Steele, he was entirely ignorant of the fact that said judgment had been previously paid as aforesaid, as were also the probate court and the distributees at the time of the settlement. Upon said settlement, the said administrator was discharged by the decree of the court from his said administration.

But two points are raised by the various charges given by the court, or those refused ; and these relate, 1st, to the competency of the administrator, Steele, as a witness for the plaintiff below, the administrator *de bonis non* of Mock ; and, 2dly, to the legal effect of the settlement by the probate court of Lowndes, of the administration of said Mock's estate as a solvent estate, the same having been previously declared an insolvent estate, and the claim of Mrs. Walker filed against it as such.

[1.] We think there can be no doubt as to the competency of Steele as a witness for the plaintiff below, who was *administrator de bonis non* of Mock's estate. The Code has introduced upon the subject of the competency of witnesses the rule for our guidance. The witness is declared competent, "unless the verdict and judgment would be evidence for him in another suit." We can imagine no case in which the verdict and judgment in the suit below could be evidence for the witness Steele "in another suit"; and must, therefore, hold that he was a competent witness for the *administrator de bonis non.*—Code, § 2302 ; *Harris v. Plant & Co.*, 31 Ala. 639.

[2.] We come next to consider the legal effect of the proceedings in the probate court, in connection with the claim filed by Mrs. Walker. If the fact that the estate of Mock was declared or decreed an insolvent estate, and that this claim was duly filed against it as such, and was afterwards paid by Steele, the administrator, in the manner above stated, makes out a case of *res adjudicata*, then the court erred, both in the instructions given, and also in its refusal to instruct as requested by defendant ; if not, the instructions were properly given, and the requests properly refused.

If it was *res adjudicata*, it cannot be assailed and set aside in any collateral proceeding; if it was not, then the payment of the claim by Steele, as administrator, *mero motu*, and without any decree of the probate court, would leave it in the condition of any other case where money is paid by mistake, which makes the payee a trustee for the payer, and raises an implied promise to pay it back, on which suit may be instituted as upon any other like promise.

And, first, let us ascertain what is the nature of the order or decree of the probate court, declaring an estate insolvent. This court, in the case of *Middleton's Adm'r v. Maull's Adm'r*, (16 Ala. 479,) said, that such an order or decree is only interlocutory. From its very nature it must be, for it settles nothing as to the validity or amount of any claim. All it is intended to effect is to establish with reasonable certainty the ground upon which the court shall proceed in the settlement of an estate. Is the estate solvent or insolvent, becomes an important preliminary question, which must be ascertained before the court can proceed with the actual settlement or final determination of the rights of the parties. This is done with certain formalities; but the whole proceeding is but preliminary to the main matter, which is the settlement of the respective rights of the *administrator de bonis non* and the several claimants. Where the question of solvency is contested, the statute gives a right of appeal, it is true; but this does not change the character of such a contest, or the decision upon it. The same statute gives the right of appeal from an order or decree of the probate court appointing or removing an executor or administrator, and this was surely never esteemed anything but an interlocutory order. The order or decree declaring an estate insolvent is, then, merely interlocutory in its character, and if *res adjudicata*, is only so on the simple question of the solvency of the estate.

The estate of Mock, as shown by the record, was declared insolvent on the first day of November, 1849. After this, as the law then stood under the act of 1843, claimants were allowed six months to file their claims; and all claims not so filed were to be forever barred, unless the assets were more than sufficient to pay such claims, when the surplus,

as it was held under that act, in *Middleton's Adm'r v. Maull's Adm'r*, (16 Ala. 479,) was to be distributed to such creditors as had filed their claims against the administrator within eighteen months, although they had neglected to file them as claims against the insolvent estate within six months from the declaration of insolvency. Since the Code went into operation, and under the terms employed in the Code, we may remark, a different rule has been observed. As the law and the decisions under it now stand, all claims which are not filed within six months from the declaration or decree of insolvency are forever barred; and if the estate proves solvent, and there is any surplus left, it must be apportioned among the distributees of the estate.—See *Puryear v. Puryear*, 31 Ala. 555, and cases there cited.

This claim, it appeared, was filed on the 27th of April, 1850, within the six months. On the 18th of February, 1856, the claim was paid by Steele, the administrator; and in September, 1856, Steele, as administrator, made a final settlement of his administration of said estate, in which he was allowed the payment of this claim as a credit. There was a surplus in his hands after the payment of all the claims against the estate, and this surplus was decreed to the distributees, who were all before the court; and he was finally discharged from his administration. It would thus appear from the record, that no *administrator de bonis non* was appointed, as the act of 1843 provides may be done; but that, as that act also provides, the administrator, Steele, "was continued in office", to conduct and settle it as an insolvent estate.

Now, from the foregoing statement of facts, as presented by the record, it is manifest that there never was any judgment, order, or decree of the probate court, upon this claim, either as to its amount, or as to its validity. The administrator, Steele, undertook to pay it without any order or decree of the court. He paid it in April, 1856, and there was no settlement of the estate made with the court until September of that year. He must have undertaken to pay it, and did actually pay it, then, upon his own responsibility. It was his own act as administrator, in the common course of his administration, and without any shelter or protection

such as an order or decree of the court would give; and would be so held under any proceeding against him in which it might be called in question. The subsequent settlement of the estate with the probate court, when it was shown that all the debts were paid, and this among them, and when the surplus remaining in his hands was decreed to the distributees, who were the only parties before the court, cannot alter or affect its character. The allowance of this claim as a voucher, in the account of the administrator upon that settlement, showing how he had administered the assets, is not a decision, or judicial act of the court, which affects the party whose claim had been paid. Her claim had been paid in full by the administrator, and she had no further interest to look after or prosecute. The claim was paid, and he held a receipt for the payment, as a voucher to show how he had administered the assets. No contest could ever arise in the probate court, as to the amount or validity of the claim filed, after "nine months" from the time when the estate was declared insolvent; and more than nine months having elapsed, both the administrator and the claimant were compelled to regard any right to contest the claim in that court as closed and precluded. If wrongfully paid, the distributees, I admit, upon the settlement with them respecting the surplus, might contest with the administrator the allowance of such a voucher; but that would be a contest between the administrator and the distributees, and would be *res adjudicata* as between them. But say that the distributees had contested this voucher and allowance, and had done so successfully, and had made the administrator account again for the money wrongfully paid to Mrs. Walker, through mistake; can there be any law or justice in saying, that because they had succeeded, in this contest with the administrator, in showing that the money had been wrongfully paid, that Mrs. Walker should have the right to plead that as a judgment in her favor, when sued for the money she had improperly received? It amounts to this: one party has the right to plead and to show that money has been wrongfully paid by his contestant to a third party, and the party who received the money wrongfully has the right to plead that judgment in

bar of a suit to recover back the money. The rule of *res adjudicata* does not surely intend to put an end to legislation on terms so unjust and unreasonable. As the case is presented, the payment by Steele was like any other payment made by an administrator at his own election, and without contestation, or order of court; and being such, if he paid a claim the second time, through mistake, which had been previously paid, he can rightfully sue in assumpsit to recover it back; or an *administrator de bonis* who succeeds him can do the same thing, if the payment by the administrator in chief has been allowed to him as a credit in the settlement of his administration.

But, if there be no force in the general reasoning already employed, this question of *res adjudicata* is set to rest, I think, by the very terms of the statute of 1843, under which this estate was declared insolvent, and the claim filed. That statute, in the 11th section, after providing when and how the executor or administrator of an insolvent estate shall make settlement, uses these words: "And at such settlement, the court shall *adjudge and decree* to *each creditor,* whose claim shall have been allowed, as herein provided, his ratable proportion," &c.—Acts 1842–3, p. 37. It is not pretended that any such judgment or decree of her ratable proportion was rendered in favor of Mrs. Walker in this instance. The record shows, in fact, that no such judgment or decree was rendered in favor of any one of the creditors; and without it, we are of opinion, that no claim paid by the administrator, either as to its amount, validity, or in any other respect, ever received the impress of *res adjudicata,* so far as the said creditors are concerned.

There is no error in the rulings of the court, and the judgment below is affirmed.