(81 South. 32)

JULIAN v. WOOLBERT. (6 Div. 789–790.)

(Supreme Court of Alabama. Jan. 16, 1919.)

**1. APPEAL AND ERROR** ⊂⟩837(2)—REVIEW—CONSIDERATION OF RECORD ON FORMER APPEAL.

On appeal the court may consider the record on a former appeal.

**2. ACCOUNT** ⊂⟩1—SUIT FOR ACCOUNTING—GROUNDS.

That a bill for accounting may lie, the remedy at law must be inadequate or the accounts must be mutual, or must be so complicated as to require consideration by chancery court, or a discovery in equity must be needed, or the fiduciary relation must exist between the parties, or defendant must be guilty of fraud or wrong dealing giving equity jurisdiction.

**3. ACCOUNT** ⊂⟩5 — GROUNDS — MUTUAL ACCOUNTS.

Where complainant was to receive a certain monthly salary as a mine superintendent until the output reached a certain number of tons a day, when the salary was to be increased and there was a running and continuous account by complainant for purchases in respondent's commissary and for moneys intrusted to him by respondent to meet pay rolls, books of the operation of the mine being kept by respondent and credits for salary to complainant being given, an accounting in equity was proper.

**4. EQUITY** ⊂⟩139—PRAYER FOR PROCESS—ADDITION OF PARTIES NOT NAMED.

One may be made a respondent if appropriate relief be sought against him, though he may not be named in the prayer for process.

**5. EQUITY** ⊂⟩349 — ADDITIONAL PARTIES—RIGHT TO BE PRESENT AT TAKING OF TESTIMONY.

In view of Chancery Rule 49, a new party added by amendment is entitled to be present at a taking of adversary testimony in the cause.

**6. EVIDENCE** ⊂⟩580—TESTIMONY FORMERLY TAKEN.

Where the matters in issue and the parties are essentially the same, privies in blood, in law, or in estate, testimony formerly taken is competent evidence, though new personal representatives are thereafter made parties by revivor.

**7. EXECUTORS AND ADMINISTRATORS** ⊂⟩37(5)—REVOCATION OF LETTERS—ADMINISTRATORS DE BONIS NON—DECLARATION OF INSOLVENCY.

In a suit for an accounting, where executrix had reported insolvency of the estate and a decree of insolvency had been entered by virtue of Code 1907, § 2756, an administrator de bonis non, appointed under section 2767 et seq. by the creditors, became vested with the property, in view of section 2773, and any former grant of letters was thereby revoked, though the declaration of insolvency did not ipso facto terminate the authority of the executrix for certain purposes.

**8. EXECUTORS AND ADMINISTRATORS** ⊂⟩438(5)—PARTIES—DEVISEES AND LEGATEES.

A sole devisee and legatee under the will of a respondent in a suit for an accounting is a proper, but not a necessary, party to an amended bill against respondent's administrator de bonis non.

**9. EXECUTORS AND ADMINISTRATORS** ⊂⟩411—CLAIMS AGAINST ESTATE—EFFECT OF DECLARATION OF INSOLVENCY—PLEADING.

When during the progress of a suit against the personal representative on decedent's liability the estate is declared insolvent, the fact may be pleaded specially, but the only effect is that, if judgment is rendered on the other issues against the personal representative, execution cannot issue, and the judgment must be certified to the probate court, although insolvency forms a good plea in bar if it has been declared before the commencement of suit.

**10. EQUITY** ⊂⟩214 — PRACTICE — DEMURRERS TO PLEADINGS.

The practice in chancery of demurring to a plea rather than setting the same down for hearing on its sufficiency has not been approved.

**11. EXECUTORS AND ADMINISTRATORS** ⊂⟩473, 474(5)—SUIT FOR ACCOUNTING—PREMATURE DECREE.

In a suit for an accounting against a decedent's estate as represented by the widow as executrix and sole legatee, an entry of a final decree for complainant was premature, where the executrix, although required by the bill to plead, answer, or demur, failed to do so, and where no decree pro confesso was taken against her.

Appeal from Circuit Court, Blount County; O. A. Steele, Judge.

---

⊂⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by S. A. Woolbert against L. R. Julian, administrator de bonis non of the estate of Andrew J. Reilly, deceased. Decree for complainant and respondent appeals. Reversed and remanded.

Sterling A. Wood, of Birmingham, and G. W. Darden, of Oneonto, for appellant.

M. L. Ward and Smith & McCary, all of Birmingham, for appellee.

THOMAS, J. The amended bill was for accounting between debtor and creditor.

[1] On the former appeal—if we look at that record as we may do (N. C. & St. L. Ry. v. Crosby, 194 Ala. 338, 350, 70 South. 7)—the original bill was by S. A. Woolbert against Andrew J. Reilly and others, for an accounting and to declare an interest in the partnership lands. Reilly v. Woolbert, 196 Ala. 191, 72 South. 10. It was held that on the facts averred a partnership was created, and plaintiff was entitled to an accounting and settlement of the partnership business as an independent equity; that the phase of the bill and alternative prayer for an accounting between the parties as creditor and debtor was insufficient in not showing mutual accounts. It was further decided that the verbal agreement for the purchase of an interest in the partnership, consisting partially of lands, was violative of the statute of frauds; and the opinion concluded with the statement that "with a proper amendment showing facts which would render an accounting, as between debtor and creditor," the bill may be maintained. Reilly v. Woolbert, supra, 196 Ala. 194, 72 South. 11.

This record does not contain the original bill; only the last amendment, in the "cause styled S. A. Woolbert v. Fairchilds Coal & Coke Company, A. J. Reilly, Mrs. A. J. Reilly, and L. R. Julian, as the administrator de bonis non of the estate of A. J. Reilly, Deceased," filed May 21, 1917, rewriting the bill. Defendant L. R. Julian, as administrator, demurred to the bill as amended, pleaded thereto and answered.

Trying to meet the adverse ruling contained in the decision on first appeal and its suggestion as to an accounting between debtor and creditor, it was averred that Mr. Woolbert began work for Mr. Reilly, who was doing business in the name of Fairchilds Coal Company, on November 8, 1904, under a contract to mine or have mined coal at $1 per ton placed on board the cars, and worked under said contract to April, 1905, at which time there was due Woolbert $2,419.76, "under said contract, under an open, running account"; that at that time Reilly made another contract with him, "by which it was mutually agreed that complainant (Woolbert) should have a one-tenth interest in the business of said company for every $3,000 paid therein, or put into said business by complainant, and such indebtedness that was then due

complainant should be considered as a part of the purchase money of said interest so purchased, and that complainant was to be superintendent of said mining business, and to receive $80 per month as compensation for his services until the monthly output of coal from said mine should exceed 100 tons per day, at which time his salary would be increased to $100 per month during such time as the output of said mine exceeded 100 tons per day; that under said contract the complainant was to enter upon the discharge of his duties as such superintendent, and to receive compensation for his services as such superintendent, on the 1st day of May, 1905, and from month to month thereafter."

It is further averred that Woolbert entered upon the discharge of his duties as such superintendent on May 1, 1905, and that the monthly output of coal from said mine exceeded 100 tons per day by the 1st day of June, 1905, and thereafter the monthly output each day exceeded 100 tons per day, except a few months during the year 1907, until the year 1912, when said Reilly excluded Woolbert from the management or superintendency of the business; that from May, 1905, until February, 1912, Woolbert, as superintendent, handled large sums of money belonging to A. J. Reilly in meeting pay rolls and discharging other liabilities and expenses of said mining business; that he was charged by said Reilly "with said sums so received by him for such purpose, and given credits for payments made by complainant (Woolbert) in satisfying said pay rolls"; that from the time complainant commenced work for A. J. Reilly, his account against Reilly "was an open, running account, and was made in contemplation of future dealings of the same nature, between the parties for services to be rendered by complainant for said A. J. Reilly, being a period largely over seven years, and during the whole of said time said A. J. Reilly * * * sold to complainant merchandise out of the commissary run by him, and charged said sales to complainant, and said sales being made daily during each month during said time, and constituted an open, running, and continuous account by said A. J. Reilly * * * against complainant, and that said respective accounts were mutual, and that there has never been any settlement of such transactions between complainant and said A. J. Reilly; * * * the same has been kept open, and the amount thereof undetermined between the parties during the whole of said time"; that during said transactions Reilly became indebted to Woolbert in the sum of $7,000 over and above his indebtedness to Reilly; that he demanded an accounting, but never received the same; and that the account between the said A. J. Reilly and Woolbert consisted of mutual claims of each against the other, and of numerous transactions each

month, and were in contemplation of future dealings of a similar nature with one another.

For convenience, we will dispose of the material questions presented in the order urged by appellant's counsel.

[2] The essentials of a bill for accounting are stated (2 Mayf. Dig. 19) as follows: (1) The remedy at law must be inadequate (Phillipps v. Birmingham Industrial Co., 161 Ala. 509, 514, 50 South. 77, 135 Am. St. Rep. 156; Friedman v. Fraser, 157 Ala. 191, 47 South. 320; Yellow Pine Export Co. v. Sutherland-Innis Co., 141 Ala. 664, 37 South. 922; Lindsey Lumber Co. v. Mason, 165 Ala. 194, 51 South. 750; Chrichton v. Hayles, 176 Ala. 223, 57 South. 696; Compton v. Gilder, 176 Ala. 309, 58 South. 271; Lee v. Houston, 197 Ala. 652, 73 South. 327; Compton v. Collins, 190 Ala. 499, 67 South. 395; Metcalf v. Clemmons-Powers & Co., 76 South. 9[1]); (2) or the accounts must be mutual (Lee v. Houston, supra; Reilly v. Woolbert, 196 Ala. 191, 72 South. 10, 11; Phalin v. Dearman, 181 Ala. 320, 61 South. 941; Chrichton v. Hayles, supra; Hulsey v. Walker County, 147 Ala. 501, 40 South. 311; Crothers v. Lee, 29 Ala. 337; Dickinson v. Lewis, 34 Ala. 638; Avery v. Ware, 58 Ala. 475; Tecumseh Iron Co. v. Camp, 93 Ala. 572, 9 South. 343; Attalla Min. & Mfg. Co. v. Winchester, 102 Ala. 184, 192, 14 South. 565; Beggs v. Edison Co., 96 Ala. 295, 11 South. 381, 38 Am. St. Rep. 94; Compton v. Gilder, supra; 2 Story, Eq. Jur. [14th Ed.] §§ 598, 602–616); (3) or must be so complicated as to require consideration by a chancery court (Phalin v. Dearman, supra; Hulsey v. Walker Co., supra; Lee v. Houston, supra; Tecumseh Iron Co. v. Camp, supra; Kirkman v. Vanlier, 7 Ala. 217; Avery v. Ware, supra; Knotts v. Tarver, 8 Ala. 743; Attalla Min. & Mfg. Co. v. Winchester, supra; Crothers v. Lee, supra; Beggs v. Edison Co., supra; Hall v. McKeller, 155 Ala. 508, 46 South. 460; Oden v. Lockwood, 136 Ala. 514, 33 South. 895; Pollak v. Chaflin Co., 138 Ala. 644, 35 South. 645; Terrell v. Southern Ry. Co., 164 Ala. 423, 51 South. 254, 20 Ann. Cas. 901; Dargin v. Hewlitt, 115 Ala. 510, 22 South. 128; Chrichton v. Hayles, supra; Compton v. Gilder, supra; Reilly v. Woolbert, supra; 2 Story, Eq. Jur. [14th Ed.] § 600; Darthez v. Clemens, 6 Beavan, 165); (4) or a discovery in equity must be needed (Chrichton v. Hayles, supra; Kirkman v. Vanlier, supra; Knotts v. Tarver, supra; Avery v. Ware, supra; Tecumseh Iron Co. v. Camp, supra; Beggs v. Edison Co., supra; Hall v. McKeller, supra; Halsted v. Rabb, 8 Port. 63; Pollak v. Chaflin, supra; Terrell v. Southern Ry. Co., supra; Metcalf v. Clemmons-Powers & Co., supra; Cullman Prop. Co. v. Hitt Lumber Co., 77 South. 574[2]; (5) or the fiduciary relation must exist between parties (Hall v. McKeller, supra; Hulsey v. Walker Co., supra; Avery v. Ware, supra; Tecumseh Iron Co. v. Camp, supra;

Beggs v. Edison Co., supra; Fowle v. Lawrason, 5 Pet. 495, 8 L. Ed. 204; 2 Story, Eq. Jur. [14th Ed.] § 622; Pollak v. Chaflin Co., supra; Phillipps v. Birmingham Industrial Co., supra; Enslen v. Allen, 160 Ala. 529, 49 South. 430); (6) or the defendant must be guilty of fraud or such wrong dealing as authorizes a court of equity to take cognizance (Knotts v. Tarver, supra; 2 Story, Eq. Jur. [14th Ed.] § 624). "An accounting is always ordered in a court of equity, where it is an incident to some other relief; but, where an accounting is the only ground of equitable intervention, there should be some averment of facts to show that a complete remedy cannot be had in a court of law, or some fact peculiar to a court of equity." Tecumseh Iron Co. v. Camp, supra; 2 Story, Eq. Jur. (14th Ed.) § 599.

[3] We have noted, among other things, the averment in the amended bill that Woolbert was to receive $80 as a monthly salary during the time the output of the mine was less than 100 tons per day, and $100 as a monthly salary for such time as the output was in excess of 100 tons; that this agreement was of force from 1905 to 1912. In addition, during such time, there was a running and continuous account of Woolbert for purchases made by himself and family in the commissary and for the moneys intrusted to him as superintendent by Reilly, with which to make the pay rolls at the mine, necessary in the conduct of said superintendence. Under such statement of fact, in connection with the further facts that the books of the operation of the mine were kept by Reilly and associates (of pay rolls paid, credits therefor to Woolbert, and of the daily output of coal), and credits for salary due Woolbert during the years under which he claimed salary, dependent on and varying with the daily output of coal from the mine, the legal remedies are inadequate, and a suit in equity for an accounting was proper. 2 Mayf. Dig. 19; 4 Pomeroy's Eq. Jur. § 1421; Jewett v. Bowman, 29 N. J. Eq. 174; 39 L. R. A. (N. S.) 45, 53, 58, notes; 2 Story, Eq. Jur. (14th Ed.) § 589 et seq.; 3 Black. Comm. 164.

Respondent sought to plead the statute of limitations as a defense to complainant's claim as on an open account, or to some part thereof. Code 1907, § 4838; Battle v. Reid, 68 Ala. 149; Gulf Coal & Coke Co. v. Musgrove, 195 Ala. 219, 223, 70 South. 179; Sheppard v. Wilkins, 1 Ala. 62. For a definition of mutual accounts as affected by the statute of limitations, see Todd v. Todd, 15 Ala. 743; Wilson v. Calvert, Adm'r, 18 Ala. 274; McCulloch, Adm'x, v. Judd Sons & Co., 20 Ala. 703; Bradford v. Spyker's Adm'r, 32 Ala. 134, 143; Ware v. Manning, 86 Ala. 238, 5 South. 682; Loventhal & Son v. Morris, 103 Ala. 332, 341, 15 South. 672.

[4, 5] The amendment made as real respondent to the record, against whom pro-

[1] 200 Ala. 243.       [2] 201 Ala. 150.

cess was prayed, the representative of the creditors as the administrators de bonis non of the insolvent estate. Code 1907, § 2767. One may be made a respondent if appropriate relief is sought against such party, in equity, though such party may not be named in the prayer for process. Jackson v. Putman, 180 Ala. 39, 60 South. 61; Lucas v. Bank of Darien, 2 Stew. 280. Such was the effect of the amendment as to Mrs. Iva M. Reilly. It is a general rule in equity pleading that a new party added by amendment is entitled to be present at the taking of adversary testimony in the cause. Chan. Rule 49; Cross v. Watson, 197 Ala. 171, 72 South. 394; Harris v. Moore, 72 Ala. 507, 511.

[6] Where, however, the matters in issue and the parties are essentially the same—privies in blood, in law, or in estate—testimony formerly taken is competent evidence, though new personal representatives are thereafter made parties by revivor. Patton v. Pitts, 80 Ala. 373; Smith v. Keyser, Ex'r, 115 Ala. 455, 458, 22 South. 149; Coulson v. Scott, 167 Ala. 606, 611, 52 South. 436; Wells v. Am. Mortg. Co., 109 Ala. 430, 20 South. 136. On this question (Harris v. Moore, supra) there is no conflict, since the testimony there in question was taken in chancery before the cause was at issue as to a material defendant; the holding being that it was inadmissible for any purpose against one not brought in as a party litigant. There was no error in the introduction of the testimony taken in the instant cause before the revivor, over the objection of respondent, L. R. Julian, administrator of the insolvent estate of Reilly.

[7] A further question is, Was said Julian, as administrator, improperly made a party respondent? The amended bill averred that, as executrix qualified under the will of Mr. Reilly, deceased, Mrs. Reilly reported the estate insolvent, and a decree of insolvency was rendered by the probate court having jurisdiction thereof. Code, 1907, § 2756. It was then the duty of such personal representative to make final settlement with the probate court of the administration to date of settlement. Code, § 2763. The creditors may nominate to the court and elect any fit person, an inhabitant of the state, "as administrator of the property, rights, and credits of such estate unadministered." Code, § 2767 et seq. In the instant case the said L. R. Julian was "nominated," "elected," "appointed," and qualified as such administrator. This appointment had the effect of revoking "any former grant of letters on the estate" of A. J. Reilly, deceased; and the property of the estate was thereby vested in such administrator. Code, § 2773. Such is the declared effect of the statute, though such insolvency proceedings did not, ipso facto, terminate the authority of this personal representative for certain purposes; and, though it has been held that if a personal representative continues to administer the estate after such declaration of insolvency (the creditors not having elected or the court appointed another in his stead), his acts as such representative are valid, and the sureties on his official bond remain bound as if no declaration of insolvency had been made. Clay, Adm'r, v. Gurley, Adm'r, 62 Ala. 14. Nor is a contrary effect found in decisions holding that devisees and legatees of a testator or heirs at law or next of kin of a decedent, the estate of whom is reported insolvent, are not precluded from surcharging (Godwin v. Yonge, 22 Ala. 553; Foscue v. Lyon, 55 Ala. 440; Randle v. Carter, 62 Ala. 95, 105, 106; Kilgore v. Kilgore, 103 Ala. 614, 621, 15 South. 897) the administrator's accounts, or showing unauthorized expenditures made by him, or if the estate proves in fact solvent (by failure of creditors to file claims or by disallowance of same) that the surplus estate remaining belongs to such parties in interest. Eubank v. Clark, 78 Ala. 73; Cunningham v. Lindsay, 77 Ala. 510, 514; Clark v. Eubank, 80 Ala. 584, 3 South. 49.

[8] It would appear that such sole devisee and legatee under Mr. Reilley's will would be a proper, but not a necessary, party to the instant bill. Shelton v. Timmons, 189 Ala. 289, 66 South. 9; Merchants' Nat. Bank of Tuscaloosa v. McGee, 108 Ala. 304, 19 South. 356; McClarin v. Anderson, 104 Ala. 201, 209, 16 South. 639; Sims' Chan. Prac. § 107. However, having knowledge of the facts, she reported the estate insolvent. Her letters testamentary were revoked by the act of the appointment of the administrator de bonis non, under the statute, and his qualification as such personal representative. Code, § 2773; Edwards v. Gibbs, 11 Ala. 292.

In whose name may the revivor be had for the prosecution under the statute of the suit in chancery to a judgment if not in such last-named administrator? The pending cause in equity, for the procurement of a judgment, was sought to be prosecuted against the administrator de bonis non of the insolvent estate. The effect of adjudication of insolvency of estates of decedents on pending suits, brought against such decedents or against the personal representatives thereof, has often been before the courts. Without reference to statutory changes, the earlier decisions would not appear to be harmonious with the later announcements of our court. The early cases were to the effect that such suits may not proceed to judgment against "any executor or administrator after the estate of his testator or intestate be represented insolvent." Colbert v. Chandler, Adm'r, Minor, 254; Hale, Adm'r, v. Cummings & Spyker, 3 Ala. 398; Edwards v. Gibbs, etc., 11 Ala. 292; Hearrin v. Savage, 16 Ala. 286, 292; Powe & Smith v. Sterrett, 16 Ala. 339, 342; Middleton's Adm'r v. Maull's Adm'r, 16 Ala. 479; Coster v. Brack, 19 Ala. 210; Lee v. Leachman, 22 Ala. 452.

534 202 ALABAMA REPORTS

In sections 1858–1860 of the Code of 1852, since and now, it is provided that during the progress of any suit against an executor or administrator, he may show that the estate had been reported insolvent and continue the cause until final disposition of such report (Code 1907, § 2793), and in case of such insolvency "the other issues must be tried, and judgment rendered thereon" (Code, § 2794); and if judgment is for the plaintiff, no execution may issue thereon, but the judgment "be certified to the proper probate court" (Code, § 2795).

[9] Under such statutory changes the decisions have been that in such pending suit "the other issues may be tried, and judgment rendered thereon," in the court of its pendency having jurisdiction of the subject-matter and of the parties, and then certification of such judgment may be had and filed in the cause of the insolvent estate or administration thereof in the probate court. McEachin v. Reid, 40 Ala. 410; Ray v. Thompson, 43 Ala. 434, 451, 94 Am. Dec. 696; Hatchett v. Curbow, 59 Ala. 516, 523; Randle v. Carter, 62 Ala. 95. Thus the Chief Justice states the rule under the statute as to pending actions in the circuit court:

"When during the progress of a suit against a personal representative, founded on a debt or demand or liability of the testator or intestate, the estate is declared insolvent, the fact may be pleaded specially; *but the only effect* is [italics ours], that, if judgment is rendered on the other issues against the personal representative, execution thereon cannot issue, and to the court of probate the judgment must be certified for allowance. But if, before suit commenced, the estate has been declared insolvent, the insolvency forms a good plea in bar." Shiver, Ex'r, v. Rousseau, 68 Ala. 564, 566; Cunningham v. Lindsay, 77 Ala. 510; Kilgore v. Kilgore, supra; Seals v. Holloway's Adm'r, 77 Ala. 344, 348; Cogburn v. McQueen, 46 Ala. 551, 565; Woolfolk v. Ingram, 53 Ala. 11; Ouchita Nat. Bank v. Fulton, 195 Ala. 34, 70 South. 722; Lavergne v. Evans Bros. Const. Co., 166 Ala. 289, 292, 293, 52 South. 318.

There was no error in overruling demurrer to the bill making as respondent the administrator de bonis non of the insolvent estate of A. J. Reilly, deceased.

Appellant's counsel assigned error challenging the action of the trial court in not permitting respondent to make defense by pleas. In short, this is the argument made in urging error. It is likely that under the rule prevailing in this court such is not an argument requiring consideration of such assignment of error. Georgia Cotton Co. v. Lee, 196 Ala. 599, 603, 604, 72 South. 158; Johnson v. State, 152 Ala. 93, 44 South. 671; W. U. T. Co. v. Benson, 159 Ala. 254, 48 South. 712; Republic Iron & Steel Co. v. Quinton, 194 Ala. 126, 69 South. 604. Demurrer was sustained to pleas 1, 2, and 3.

[10, 11] The practice in chancery of demurring to a plea rather than setting the same down for hearing on its sufficiency has not been approved. Glasser v. Meyrovitz, 119 Ala. 152, 155, 24 South. 514; Town of New Decatur v. Scharfenberg, 147 Ala. 367, 372, 41 South. 1025; City of Woodlawn v. Durham, 162 Ala. 565, 50 South. 356. It is clear from the decree rendered on February 9, 1918, that demurrer to the pleas was sustained, notwithstanding the note of submission of March 22, 1918, included said pleas therein. It is fair to the trial judge to say that, having theretofore sustained demurrers to each of the pleas when the final decree was rendered, he treated said pleas as eliminated. His final decree contained no reference to the matters embodied in pleas 1 and 3, which it should have done. As to plea 1, the personal liability of the administrator may have been guarded against on the coming in of the register's report and decree thereon. However, as to plea 3, in its application to the sum due complainant on the 1904 contract, it should have been given cognizance in the decree as a proper direction to the register on reference. This ruling on pleas, or failure to take account of the same, is challenged by the assignment of error and argument based on the rendition of the final decree. Moreover, an examination of the entire record shows that, though required by the note to the bill as last amended to plead, answer, or demur, etc., Mrs. Reilly filed no such pleading, nor was a decree pro confesso taken against her as an individual or sole legatee or distributee under Mr. Reilly's will. It would appear that as to her the submission for final decree was premature. Sloss-Sheffield S. & I. Co. v. Yancey, 201 Ala. 200, 77 South. 726.

It results from the foregoing that the decree of the lower court is reversed, and the cause is remanded to the circuit court, in equity.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.